WHEATLEY *v.* KUTZ ET AL.

[No 2,317.  Filed February 17, 1898.]

BANKS AND BANKING. — *Principal and Agent.* — *Subagent.* — *Complaint.*—Where a depositor authorized a bank to honor checks drawn on his deposit by his agent and general manager, recovery may be had by the bank against such depositor for overdrafts, under an allegation in the complaint that the checks were drawn by such agent and general manager, notwithstanding the proof showed that part of said checks were drawn by a subagent, where the evidence further showed that such checks were drawn by direction of the agent, by and with the consent of the depositor, and that the bank before honoring such checks was informed by the agent and general manager of such arrangement.

From the Tipton Circuit Court.  *Affirmed.*

*William R. Oglebay* and *John L. Oglebay*, for appellant.

*McMath & Stahl*, for appellees.

BLACK, J.—The appellee Samuel L. Kutz sued the appellant, the complaint consisting of two paragraphs.  In the first it was, in substance, stated that said Kutz was in the private banking business at Kirklin, Indiana; that in April, 1895, the appellant was the owner of a flouring mill at said town and was engaged in the business of buying grain and manufacturing flour, meal, bran, and mill-feed, and selling and exchanging the same; that on the 26th of April, 1895, he went to the bank of said Kutz, and deposited therein $300.00, taking from said Kutz a bank book and a check book; that said depositor at the time represented to said banker that the former was going to buy grain and do a general milling business at said place; that the management and supervision of said business would be under control of one Telemachus P. Holmes, who was at that time his legally constituted agent to do and act for and in place of the appel-

lant; that within a few days he would deposit in said bank $1,000.00 in addition to said deposit of $300.00, and that he would do the business of his said mill through said bank and would make deposits of money sufficient to carry on said milling business; that his said agent, Holmes, would carry said deposit book and check book; that all checks drawn on said bank by said Holmes were to be by said Kutz duly honored and paid; and that all checks and overdrafts would be promptly paid by the appellant. It was alleged that the appellant on said day delivered to said Holmes, as his said agent, said Wheatley's bank deposit book, and said Holmes, as such agent, took possession, control and supervision of said mill and milling business, and continued to conduct said business as such agent until about the 10th of July, 1895; that between the 26th of April and the 4th of July, 1895, Holmes, as such agent, did draw checks on said bank to divers persons, in all sixty-six checks, amounting in the aggregate to $1,163.83, "as per annexed itemized statement of amount of each check, number and date of payment, which is filed herewith marked exhibit A, and made a part of this complaint." That Wheatley, by his said agent, Holmes, between the 26th of April and the 18th of June, 1895, deposited, together with the $300.00 deposited by Wheatley, the sum of $744.30; and on the 15th day of July, 1895, after said Holmes as such agent was no longer in the employment of said Wheatley, the latter deposited in said bank, "as a credit on over check or over draw" made by his said agent, the sum of $200.00, making total deposits by Wheatley by himself and his said agent the sum of $944.30, an itemized statement of the amount and date of each deposit being filed with the complaint and referred to therein as a part thereof. It was alleged that after deducting all credits and

deposits, there was then due said Kutz "on said over draw" the sum of $237.65, with interest from May 15th 1895; wherefore, etc.

The second paragraph of complaint was upon the balance of an account against said Wheatley in favor of one Raleigh Staley, by him assigned to said Kutz. Staley was made a defendant to this paragraph, and he answered, stating the assignment, and that he had no interest in the matter.  He is named in the caption of the assignment of errors, along with Kutz, as an appellee.  To the second paragraph of complaint the appellant answered payment; and he answered the first paragraph by general denial, and by special paragraphs which need not be further noticed.  The only specification in the assignment of errors argued here is that relating to the overruling of a motion for a new trial filed by the appellant.

It is contended for the appellant that the finding was not sustained by sufficient evidence.  The finding was general, for the plaintiff against the defendant "on the matter in suit," that is, upon both paragraphs of the complaint, for $340.00.

The evidence clearly sustained the second paragraph of the complaint.  Indeed, it is admitted by the appellant that there was a conflict of evidence upon the question as to whether the account sued on in the second paragraph had been paid.  That was the only matter at issue in relation to the assigned account.  Therefore, it is quite plain that the assignment that the finding was not sustained by sufficient evidence cannot be maintained.  But it was also assigned as a cause for a new trial that the amount of recovery was too large, and under this we may dispose of the other matters argued before us.  The account of the appellant was overdrawn.  The greater portion of the checks by which the deposits were withdrawn and

overdrafts were made were signed in the appellant's name "per T. P. Holmes," but some of them were drawn in the name of the appellant "per T. J. Roberts." It is claimed by counsel for appellant that as to the checks so drawn by Roberts there could be no recovery under the complaint, and as the amount of the finding was made up by allowing against the appellant the aggregate of the sums drawn on the checks signed by Roberts and by Holmes, that therefore the amount of the finding was excessive. It is supposed by counsel that as to the sums drawn on the checks so signed by Roberts there could be no recovery without departing from the theory of the first paragraph of the complaint. In that paragraph, as has been stated above, it was alleged that the appellant informed Kutz as to the general character of the business the former was about to engage in and carry on, and represented to Kutz that the management and supervision of that business would be by and under the control of Holmes as appellant's agent, and that appellant would do the business of the mill through the bank of Kutz; and it was alleged that appellant requested Kutz to honor and pay all checks drawn by Holmes, promising that all checks and overdrafts would be paid promptly by the appellant. It was also stated in the complaint that the checks by which the account was overdrawn were drawn by Holmes as appellant's agent. It appears from the evidence that in the interview and transaction between Kutz and the appellant in person, the arrangement was made, and the instruction concerning Holmes was given, as alleged in the complaint, no mention of Roberts being made by the appellant personally to Kutz.

It also appeared in evidence that Holmes was sometimes absent from the mill and engaged elsewhere in buying wheat as appellant's agent, and that for the

purpose of purchasing such wheat as might be of-fered for sale at the mill during the absence of Holmes, it was arranged and agreed between the ap-pellant and Holmes that Roberts, who also was em-ployed at the mill, should draw the required checks. Holmes told the appellant that in the absence of the former he "wanted him to authorize Roberts to draw checks," and the appellant did so.   It was shown in evidence that the first time a check so drawn by Rob-erts was presented for payment the clerk of the banker refused payment until after he had gone to the mill and had there consulted with Holmes, who then instructed the clerk to honor such checks signed by Roberts as of Holmes' own drawing, informing him that Roberts was to put his name at the bottom in-stead of Holmes, so that they would know all the time where the business was going,—what it was for.  This direction of Holmes was obeyed, and thus the checks so signed by Roberts were honored and paid by Kutz.

We think there was no error in allowing against the appellant the amount of the checks so signed by Rob-erts.   They were authorized by the appellant and in common honesty he was chargeable therewith.   It is contended, in effect, that these checks were not the checks of Holmes, and as the complaint only counted upon checks of Holmes, there could be no recovery for the money drawn upon any others.   It sufficiently appears that in drawing these checks in the absence of Holmes, Roberts was acting for Holmes.

We need not go into a discussion concerning the extent to which an agent may delegate his authority. No doubt, in general, where authority is given requir-ing skill or discretion on the part of the agent, he must act in person in exercising his authority, to the extent that such exercise involves skill or discretion, and cannot delegate such duties to a subagent;

though an agent may exercise powers or duties which are merely mechanical in their nature through his assistant, clerk or subagent. But this rule is restrictive of the implied power of an agent,—applicable to a case where no power of substitution has been given, or where the act of the subagent has not been ratified. The case before us is one in which the authority to do this part of the business through the assistant, Roberts, was expressly conferred upon Holmes by his principal, the appellant, and in which the party who relies upon the act of the subagent was requested to do so by Holmes. Therefore, we need not determine whether or not the acts performed by Roberts involved his personal skill, judgment or discretion. The theory of the complaint was well enough sustained in the evidence. The judgment is affirmed with ten per cent. damages.